UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David Barron,

      Petitioner,

      v.                                           Civil Action No. 1:12-cv-92

Andrew Pallito, Vermont
Department of Corrections,

      Respondents.

## <u>REPORT AND RECOMMENDATION</u>
(Doc. 4)

      David Barron, a Vermont inmate proceeding *pro se*, has filed a Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 4.)  Barron is currently serving a

state sentence of 20 years to life after a 2009 conviction of sexual assault on a minor and

an adjudication of being a habitual offender under 13 V.S.A. § 11.  The Vermont

Supreme Court affirmed the convictions on direct appeal in January 2011.  *State v.*

*Barron*, 2011 VT 2, ¶ 1, 16 A.3d 620, 623.  Barron's Petition asserts six distinct claims

challenging his conviction and sentence: (1) that his confession, which (he claims) was

the sole basis of his conviction, was coerced and the interrogating officer tampered with

the evidence by "edit[ing] out" of the videotape the portion of the interview in which he

threatened Barron with jail; (2) that he was interrogated without having received *Miranda*

warnings and without his lawyer present; (3) that certain witnesses against him changed

their story and thus were not credible; (4) that his lawyer would not allow him to testify

at trial on his own behalf and was deficient in failing to have the police audiotape analyzed for evidence of tampering; (5) that he should not have been sentenced as a habitual offender because the conduct for which he was convicted in 1989 was no longer a crime under Vermont law; and (6) that his sentence is impermissible in light of the fact that his codefendant "received 3–16 suspended."

Respondents oppose the Petition, arguing that Barron is trying to relitigate issues that either have been addressed, or should have been raised, in the state courts. (*See* Doc. 5.)[1] In a Report and Recommendation dated January 28, 2013, I concluded that three of Barron's six claims were unexhausted because they were raised for the first time in this Court, namely, his claims that his confession was coerced, that defense counsel did not allow him to testify and should have had the police audio tape analyzed, and that the prosecution witnesses changed their stories. (Doc. 9 at 5.) I also noted that Barron had sought sentence reconsideration on proportionality grounds in the Vermont Superior Court, but that he did not appeal from the trial court's denial of his motion. (*Id.* at 4–5.)

I recommended that those (unexhausted) claims be dismissed from the Petition. (*Id.* at 9.) I further recommended that Respondents be ordered to file a supplemental response addressing Barron's remaining claims. (*Id.* at 10.) The District Court adopted that recommendation, dismissed the unexhausted claims without prejudice, and ordered Respondents to file a supplemental response limited to Barron's exhausted claims. (Doc. 10.)

---

[1] Although Andrew Pallito and the Vermont Department of Corrections are named in the Petition as Respondents, the State of Vermont, by and through James M. Hughes, Franklin County State's Attorney, has filed an "Opposition" to the Petition as the proper respondent.

Respondents filed a Supplemental Response on June 25, 2013.  (Doc. 14.)  In that filing, Respondents argue that the Vermont Supreme Court's resolution of Barron's claim that he was interrogated without having received *Miranda* warnings and without his lawyer present (i.e., his Fifth and Sixth Amendment claims) was not contrary to and did not involve an unreasonable application of clearly established federal law.  (*Id.* at 2–4.)  Respondents make the same argument with respect to Barron's habitual-offender claim.  (*Id.*)  Barron has not filed any opposition or other response to Respondents' June 25, 2013 filing.

For the reasons set forth below, I recommend that the Court DISMISS each of Barron's remaining claims and DENY the Petition (Doc. 4) insofar as it contains claims not previously deleted as unexhausted.

## **Factual Background**

Drawing on the Vermont Supreme Court's factual summary in *Barron*, 2011 VT 2, this Court previously recapitulated the factual background reproduced here.  (Doc. 8 at 2–3; Doc. 9 at 2–3.)  The state courts' determinations on factual issues are presumed to be correct, and Barron has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Here, Barron has not challenged any of the facts recited by the Vermont Supreme Court in *Barron*.  I therefore conclude that Barron has not met his burden to rebut the presumption.  I further conclude that no evidentiary hearing is necessary because there are no factual issues in dispute, and because the Court can resolve the remaining issues in the Petition as a matter of law based on the present record.  *See* Rules Governing § 2254 Cases, Rule 8(a).

On July 5, 2007, police responded to a domestic altercation between Barron and his wife.  Barron was found to be in violation of his probation, was charged with disorderly conduct, and was taken into custody.  During the transport to the sheriff's office, Barron voluntarily stated that his wife wanted him arrested so that she could carry out an affair with A.M., a 15-year-old girl living in their home.  At the sheriff's office, he wrote an affidavit describing the altercation with this wife, and noted again that his wife was having a sexual relationship with A.M.  He also claimed that his wife and A.M. had threatened to have him "locked up" if he revealed their relationship.

On July 11, 2007, a detective interviewed Barron to investigate the allegations about his wife.  The investigation took place at the Chittenden Regional Correctional Facility, where Barron was being held based upon his probation violation.  The detective did not provide a *Miranda* warning, and no attorney was present to represent Barron.  On July 16, 2007, the detective met with Barron's wife and with A.M.  A.M. confirmed having had sexual relations with Barron's wife, but initially denied having relations with Barron himself.  During a second interview, however, conducted on August 1, 2007, A.M. stated that she had had sexual contact with both Barron and his wife.

That same day, Barron telephoned the detective and left a message stating that he had more information.  At that point, Barron had been released from prison and was living with his mother.  The detective arranged a meeting for August 2, 2007 near Barron's mother's house.

Barron was waiting at the meeting place when the detective arrived, and voluntarily entered the detective's vehicle.  The detective recorded the interview using a

hidden recorder.  Although the discussion began with Barron's problems with his wife, the detective directed the conversation toward Barron's claims about his wife's relationship with A.M.  Barron admitted during this conversation that he had participated in "threesomes" with his wife and A.M., and had once had sexual intercourse with A.M. As with the July 11 interview, Barron was not given *Miranda* warnings, and was not accompanied by counsel.

Barron was subsequently charged with two counts of sexual assault on a minor under 13 V.S.A. § 3252(c).  The trial court denied Barron's motions to exclude evidence related to his interviews with the detective, and Barron was ultimately convicted by a jury.  He was also found to be a habitual offender, as he had been convicted of three felonies prior to this latest offense.  One of the predicate felonies for Barron's habitual-offender adjudication was a 1989 conviction stemming from Barron's conduct of having had consensual sexual intercourse with his then-15-year-old girlfriend when he was himself under 19 years old.  *Barron*, 2011 VT 2, ¶ 36.  That conduct was a felony under Vermont law at the time, but was not a crime in Vermont when Barron was charged with the crimes for which he was convicted in 2009.  *See id.*; *compare* 13 V.S.A. § 3252(a)(3) (2005) (amended 2006), 1990 Vt. Acts & Resolves 543 *with* current version at 13 V.S.A. § 3252(c), 2006 Vt. Acts & Resolves 506.

## Discussion

### I.    Legal Standards

Federal review of state criminal convictions is limited.  Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a state

prisoner's habeas application unless the relevant state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). "Clearly established Federal law" includes only "the holdings, as opposed to the dicta," of the Supreme Court's decisions at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

A state court's decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or if the state court decides a case differently than the Supreme Court has on "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Relief is appropriate under the "unreasonable application" clause of § 2254(d)(1) "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

## II.     Fifth and Sixth Amendment Claims

On direct appeal to the Vermont Supreme Court, Barron argued that he was subjected to interrogation while in custody without a *Miranda* waiver, that the violation tainted his subsequent confession, and that his right to counsel was violated. *Barron*, 2011 VT 2, ¶ 1. As I previously noted (Doc. 8 at 4), the Vermont Supreme Court concluded that, with respect to the questioning on July 11, 2007, law enforcement *had* violated Barron's rights under *Miranda*, as well as his Sixth Amendment right to counsel.

6

The Supreme Court further found, however, that these violations did not justify suppression of all later statements, concluding that "the connection between defendant's first interview and the statement twenty days later in the second interview is too attenuated to find the admission in the second interview to be the fruit of the poisonous tree." *Id.* ¶ 25. With regard to the August 2, 2007 questioning, the Vermont Supreme Court held that *Miranda* warnings were not required because the questioning was non-custodial, and that Barron's right to counsel had not been triggered because at the time of the interview he had not yet been charged with sexual assault. As noted above, Barron does not challenge any of the facts pertinent to the Fifth and Sixth Amendment issues. The question is therefore limited to whether the Vermont Supreme Court's analysis as to the July 11 and August 2 interviews were contrary to, or involved an unreasonable application of, clearly established federal law. For the reasons that follow, I conclude that the *Barron* Court's analysis was in accord with clearly established federal law.

I begin with the August 2 interview. Warnings under *Miranda* are not required unless the suspect is both in "custody" and subject to "interrogation." *See United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011). "[T]he custody requirement is met when the questioning [is] conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak." *Georgison v. Donelli*, 588 F.3d 145, 155–56 (2d Cir. 2009) (internal quotation marks omitted). In making that determination, the Court considers "'whether a reasonable person would have *thought he was free to leave the police encounter at issue*.'" *Id*. (quoting *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004)). Here,

the circumstances do no support the conclusion that Barron was subjected to the inherently coercive pressures that constitute custody.  Barron was not incarcerated at the time, and he sought the interview, agreed to the location, and voluntarily entered the detective's car.  In addition, the detective began the August 2 interview by stating that Barron was not under arrest, that he was free to leave at any time, and that he did not have to talk to the officer.  *Barron*, 2011 VT 2, ¶ 17.  Under all of those circumstances, a reasonable person would have thought he was free to leave.  Barron was therefore not in custody at the August 2 interview and no *Miranda* warning was necessary.

As for Barron's Sixth Amendment right to counsel, the Vermont Supreme Court correctly observed that the right does not attach until prosecution is initiated.  *See Barron*, 2011 VT 2, ¶ 32 (citing *Texas v. Cobb*, 532 U.S. 162, 167–68 (2001)); *see also United States v. Moore*, 670 F.3d 222, 234–35 (2d Cir. 2012).  Barron had not yet been charged with sexually assaulting A.M. at the time the detective interviewed him on August 2.  Barron's Sixth Amendment right to counsel was therefore not violated.

There was likewise no federal error with the *Barron* Court's conclusion that both the July 11 *Miranda* and Sixth Amendment violations were "too attenuated" to make the admission in the August 2 interview the fruit of the poisonous tree.  The *Barron* Court correctly noted that the "fruit of the poisonous tree" doctrine does not require exclusion if the "connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'"  *Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)).

"In *Brown v. Illinois*, the Supreme Court enumerated four factors relevant to an attenuation analysis: (1) the administration of *Miranda* warnings; (2) '[t]he temporal proximity of the arrest and the confession'; (3) 'the presence of intervening circumstances'; and (4) 'particularly, the purpose and flagrancy of the official misconduct.'" *Mosby v. Senkowski*, 470 F.3d 515, 521 (2d Cir. 2006) (quoting *Brown*, 422 U.S. 590, 603–04 (1975)).  Here, it is true that no *Miranda* warnings were administered at the August 2 interview, so that factor does not weigh in favor of attenuation.  However, the temporal proximity between the July 11 and August 2 interviews suggests that the taint had dissipated by the time of the latter encounter.  Moreover, there were intervening circumstances, such as A.M.'s statement on August 1 that she had had sexual contact with Barron.

In addition, the purpose of the July 11 interview was not to obtain evidence of Barron's sexual misconduct, but was instead to investigate the conduct of Barron's wife. In fact, notwithstanding the detective's misconduct at the July 11 interview, Barron made no incriminating statements during that exchange.  *Barron*, 2011 VT 2, ¶ 25.  Finally, the official misconduct was not particularly conspicuous—indeed, if a Vermont judge thought that there was no violation,[2] it would be difficult to conclude that the violation should have been obvious to the detective.  On balance, the circumstances favor a finding

---

[2]  Although the Vermont Supreme Court ultimately disagreed, the trial judge had concluded that there was no *Miranda* or Sixth Amendment violation in the July 11 interview because Barron was not being questioned as a suspect but instead as a complainant in the matter of his wife's alleged criminal conduct.  *See Barron*, 2011 VT 2, ¶ 10.

of attenuation, the Vermont Supreme Court's determination on that point was neither

contrary to, or an unreasonable application of, clearly established federal law.

## III.   Habitual-Offender Claim

In an Order dated August 14, 2013, I noted that it was unclear whether Barron's

claim concerning his habitual-offender designation has in fact been exhausted—i.e.,

fairly presented to the state courts.  (*See* Doc. 15 at 2.)  Federal habeas relief from a state

court conviction generally may not be granted unless the petitioner "has exhausted the

remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  Although the

Vermont Supreme Court's resolution of the habitual-offender issue on direct appeal did

not involve any analysis of federal law,[3] the exhaustion issue does not turn solely on how

that Court treated Barron's habitual-offender claim.  (*See* Doc. 15 at 4.)  Rather, this

Court must determine how Barron presented the habitual-offender issue in state court,

and specifically whether he presented any *federal* theory that the Vermont Supreme Court

might not have addressed.  (*See id.* at 4–5.)  The Court therefore ordered Respondents to

file copies of all of the appellate filings in the Vermont Supreme Court, and particularly

all of Barron's briefs.  (Doc. 15 at 6.)  The State has supplied the requested

documentation.  (*See* Doc. 16.)  I have reviewed the state court appellate filings, the

pertinent parts of which I summarize here.

---

[3]  The Vermont Supreme Court's analysis focused on 1 V.S.A. § 214(c), which provides: "If the penalty or punishment for any offense is reduced by the amendment of an act or statutory provision, the same shall be imposed in accordance with the act or provision as amended unless imposed prior to the date of the amendment."  The Supreme Court concluded that § 214(c) did not compel a decision in Barron's favor on the habitual-offender issue because (1) the sentence at issue was imposed prior to the date of the amendment, and (2) the change in the law did not reduce the statutory punishment, but instead redefined the required ages of the defendant and the victim.  *Barron*, 2011 VT 2, ¶¶ 36–38.

The printed case filed with the Vermont Supreme Court includes Barron's "Motion for Judgment of Acquittal/Trial Memorandum" filed with the Vermont District Court. (Doc. 16-1 at 36–38.) In the trial court filing, Barron had argued that "[i]nvalid prior convictions cannot be used to enhance [the] penalty for subsequent offenses." (*Id.* at 36.) In support, he cited Vermont state court cases and one federal case: *Baldasar v. Illinois*, 446 U.S. 222 (1980) (per curiam). In his appellate brief, Barron argued that Vermont's habitual-offender statute, 13 V.S.A. § 11, does not include a decriminalized conviction. (Doc. 16-2 at 26.) He maintained that "[o]nce an act has been declared not criminal, it is contrary to the rule of lenity and the intent of the Legislature [as expressed in 1 V.S.A. § 214(c)] to use it to impose habitual offender punishment." (*Id.*) He did not cite *Baldasar* or any other federal law in his appellate brief on the habitual-offender issue. The Vermont Supreme Court cases that Barron did cite in his appellate brief did not employ any federal constitutional analysis under similar factual circumstances. The State filed its own appellate brief (Doc 16-3), but it does not appear that Barron filed any reply brief.

Barron's argument based on *Baldasar* was not "fairly presented" to the Vermont Supreme Court. He only cited *Baldasar* in his argument to the Vermont District Court, and while the Vermont Supreme Court might have seen that citation in the printed case, that is not enough to fairly present the issue to the state appellate court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar

document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.").

Even though Barron's argument based on *Baldasar* might be unexhausted, the Court should deny relief on any such claim pursuant to 28 U.S.C. § 2254(b)(2). Barron's claim based on *Baldasar* is patently non-meritorious. In *Baldasar*, the Supreme Court held that an uncounseled misdemeanor conviction—constitutional as a matter of federal law under *Scott v. Illinois*, 440 U.S. 367 (1979)—may nevertheless not be used under a sentencing enhancement statute to convert a subsequent misdemeanor into a felony. *Baldasar*, 446 U.S. at 222–24. Here, Barron has not claimed that his 1989 conviction was uncounseled. More importantly, the Supreme Court overruled *Baldasar* in 1994, and held that an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction. *Nichols v. United States*, 511 U.S. 738, 748–49 (1994). To the extent that Barron's argument based on *Baldasar* is unexhausted, the Court should reject that argument on its merits.

Outside of his citation to *Baldasar*, Barron's filings in state court with respect to the habitual-offender issue do not cite a federal constitutional provision or rely upon any federal constitutional precedents. As I previously noted, there is no doubt that Barron presented the operative facts underlying the habitual-offender issue to the Vermont Supreme Court. (Doc. 15 at 5.) But in this case Barron's reference to the factual allegations is not equivalent to the fair presentation of any federal claim. Barron's assertion of his claim does not "call to mind a specific right protected by the

12

Constitution," and the fact pattern he alleges does not fit "within the mainstream of constitutional litigation."  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982).

It makes little sense, however, to conclude that Barron's habitual-offender claim is an unexhausted federal claim because in this case the claim he asserts simply has no federal dimension.  The fact that Barron was sentenced under Vermont law as a habitual offender based on a predicate offense that is no longer a crime in Vermont did not prompt the Vermont Supreme Court to conduct any federal constitutional analysis.  I can also find no provision of the United States Constitution implicated by that fact.  Similarly, the Vermont Supreme Court's interpretation of 1 V.S.A. § 214(c) is not contrary to and does not involve an unreasonable application of clearly established federal law.  The Court should therefore DISMISS Barron's habitual-offender claim with prejudice.

## CONCLUSION

For the reasons set forth above, I recommend that the Court DISMISS each of Barron's remaining claims and DENY the Petition.  (Doc. 4.)

Dated at Burlington, in the District of Vermont, this 13th day of December, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).